IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02417-DDD-NRN

RYAN SCHEELER, an individual;
AGR GROUP LLC, a Nebraska limited liability company;
AGR, INC., a Colorado corporation; and
TOTAL UTILITY CONTRACTING OF MINNESOTA, INC., a Minnesota corporation,

Plaintiffs/Counterclaim Defendants,

v.

CANOPY HOLDINGS, LLC, d/b/a CANOPY HOLDINGS OF COLORADO, LLC, a Virginia limited liability company doing business in Colorado;
MATT HIRSCHBIEL, a Colorado resident;
CANOPY HOLDINGS OF NEBRASKA, LLC, a Nebraska limited liability company,

Defendants/Counterclaim Plaintiffs,

v.

TIMOTHY DAY, an individual,

Third Party Defendant.

**ORDER ON DISCOVERY DISPUTE RELATING TO CLAIMS OF ATTORNEY-CLIENT PRIVILEGE RAISED AT MAY 9, 2023 DISCOVERY HEARING**

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on a discovery dispute. The Court heard argument on the issues raised below on May 9, 2023. *See* Dkt. #107 (Courtroom Minutes). The Joint Statement of Discovery dispute and exhibits related thereto are in the record at Dkt. #107, Ex. 1–7.

**Background of Case**

This is a lawsuit about a business deal gone bad. Plaintiff AGR Group, LLC ("AGR") was a general contractor and roofer operating out of Nebraska. Plaintiff Ryan Scheeler ("Scheeler") is the majority managing member of AGR. He is a roofer and general contractor by trade. Defendant Matt Hirschbiel ("Hirschbiel") is the managing member of Defendant Canopy Holdings, LLC ("Canopy").

Hirschbiel and Scheeler were friends. In 2020, the owners of AGR, including Scheeler, were interested in selling that company. It is alleged that Hirshbiel enticed them to entrust him to run a more complicated "roll-up" style sale as a way to earn greater returns for all involved. Ultimately, the objective of the "roll-up" sale was to sell AGR as part of a larger portfolio, so that the sale of AGR would generate a larger rate of return than if sold alone.

It is alleged that Hirschbiel represented himself as competent and qualified to handle the set up and structure of the proposed roll-up, when in fact Mr. Hirschbiel had no particular training, skill, or experience in roll-ups or complicated mergers.

It is further alleged that Scheeler and AGR were not independently represented during the drafting of relevant documents or entering into the transaction. It is further alleged that Scheeler trusted Hirschbiel and the William Mullens law firm (hired by Hirschbiel) to act properly and in furtherance of the parties' joint interests. *See* Dkt #6 ¶ 35. Hirschbiel formed Canopy to act as the holding company for the roll-up. Scheeler and Hirschbiel became officers and employees of Canopy.

It is fair to say this entire business arrangement has gone badly. It is alleged that Hirschbiel failed to obtain necessary financing and failed to pay his own buy-in. It is

further alleged that Hirschbiel lacks the skills and experience to actually manage a roofing company. In February 2022, the Canopy board voted to terminate Scheeler as an officer and employee.

As a result of the alleged collapse of the roll-up plan and Scheeler's termination from Canopy, Scheeler and AGR have brought a number of direct and derivative claims including for a declaratory judgment, for wrongful termination, for an accounting, for breach of contract for failing to pay an alleged agreed earnout under the purchase agreement, for breach of contract related to repayment of company shares (Units); for breach of fiduciary duty against Hirschbiel, for negligent misrepresentation against Hirschbiel, for conversion, and civil theft.

**The Instant Discovery Dispute Relating to Attorney-Client Communications**

Defendants claim that they should be entitled to see allegedly privileged communications listed on the Plaintiff's Privilege Log. The Privilege Log lists communications and memos between the Dvorak law firm, Scheeler, and Timothy Day, who is a third party defendant in this suit. Pointing to Plaintiffs' claims of breach of fiduciary duty and negligent misrepresentation, Defendants insist that because those claims are "directly based" on Scheeler's alleged sole reliance on Hirschbiel and the legal advice of Williams Mullen, and the corresponding lack of independent legal advice for Scheeler regarding the disputed transaction, the privileged communications (which include communications between a Dvorak law firm and Scheeler relating to the transaction) have been put at issue, thereby waiving the attorney-client privilege.

Defendants say that Plaintiffs' Privilege Log lists hundreds of documents related to the subject transaction involving seven attorneys and two law firms, many of which

3

were sent to or copied to Scheeler. Defendants argue that this information is "directly related, and apparently contrary to, Plaintiffs' allegations and causes of action asserted in this action." Dkt. #107-1 at 8. Defendants say that Plaintiffs have put the claimed privileged information at issue "by asserting their lack of representation, independent advice, and knowledge, and sole reliance on Defendants and Defendants' counsel regarding the transaction." *Id.* Therefore, Defendants argue, the attorney-client privilege with respect to legal advice given about the transaction is waived. Citing *Mountain States Telephone & Telegraph Co. v. DiFede*, 780 P.2d 533 (Colo. 1989), Defendants insist that a plaintiff is not permitted to thrust his "lack of knowledge" into litigation as a necessary part of a claim, while simultaneously retaining the lawyer-client privilege to frustrate proof of knowledge, which would negate the very foundation or condition necessary to prevail on the claim asserted. Dkt. #107-1 at 9.

It does appear, from a review of Plaintiffs' Privilege Log, that there are significant number of documents being withheld on attorney-client privilege grounds that relate to the disputed transaction. *See, e.g.*, Dkt. #107-7 at 4–7 (listing numerous privileged documents relating to disputed transaction, including, among others, "Email correspondence regarding review of data for the transaction, review of transaction documents, and tax analysis for AGR"; "Email correspondence data to gather for due diligence list"; "Email correspondence regarding draft Asset Purchase and Contribution Agreement and term sheet"; and "Memorandum regarding summary and analysis of transaction components").

Plaintiffs, for their part, respond that under the reasoning of *Radmacher v. Graschler*, 455 P.3d 796 (Colo. 2020), there is no basis to breach the privilege here.

4

First, Plaintiffs insist that the privileged documents relate to attorney-client communications for the purpose of advising Timothy Day, who was the other owner of AGR beside Mr. Scheeler. Mr. Scheeler, by contrast, claims he did not rely on the Dvorak law firm. Instead, Scheeler considered Williams Mullen to be the experts on transactions of this sort, and Scheeler trusted Williams Mullen and Hirshbiel to provide legal advice on the transaction because Scheeler was continuing as an owner of Canopy. Timothy Day, the other owner of AGR group, was being bought out and so was not in the same position.

But the explanation of the role of the Dvorak law firm in advising Day, and not Scheeler, is merely the cursory statement of counsel, not accompanied by any evidence or affidavit. *See* Dkt. #107-1 at 5 ("AGR Group hired the Dvorak law firm primarily for the benefit of Mr. Day.").

**Analysis**

In diversity jurisdiction cases, state law generally governs attorney-client privilege. *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998); *see also* Fed. R. Evid. 501 (providing that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); *Larson v. One Beacon Ins. Co.*, No. 12-cv-03150-MSK-KLM (D. Colo. June 10, 2013). The Court therefore looks to Colorado law for guidance in resolving this dispute.

To determine whether a matter has been put at issue and thus has created an implied waiver, the court must examine whether: (1) the asserted privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party put the privileged information at issue by making it

relevant to the case; and (3) application of the privilege denies the opposing party access to information vital to its defense. *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 10-cv-02349-WJM-KMT, 213 WL 1969264, at *2 (D. Colo. May 13, 2013) (citing *DiFede*, 780 P.2d at 543–44).

Of course, it is not enough that the targeted item is expected to contain "vital, highly probative, directly relevant [evidence at] the heart of an issue," *Rhone-Poulenc Rohrer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3rd Cir. 1994), as relevance is not the standard. Rather, it is critical to assess whether the otherwise protected communications are being proffered as an instrument of proof going directly to a claim or defense.

"Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure." *People v. Sickich*, 935 P.2d 70, 73 (Colo. App. 1996); *see also Clark v. Dist. Ct.*, 668 P.2d 3, 8 (Colo. 1983).

The Colorado Supreme Court has described two situations of implied waiver: "when a client asserts a claim or defense that focuses on advice given by the attorney," and "when a client discloses privileged communications to a third party." *People v. Trujillo*, 144 P.3d 539, 543 (Colo. 2006). Placing privileged communications "at issue," that is, by asserting "a claim or defense that depends on privileged information," impliedly waives such communications. *Id.*

The Colorado Supreme Court has cautioned against the excessive application of the "in issue" exception to the attorney-client privilege, noting that the "general policy

6

against invading the privacy of an attorney's course of preparation" is "well-recognized and . . . essential to an orderly working of our system of legal procedure." *People v. Madera*, 112 P.3d 688, 690-92 (Colo. 2005) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)).

The court has also emphasized that the mere fact that privileged information might become relevant in a particular lawsuit cannot alone be enough to establish an implied waiver of the attorney-client privilege; if it could, then the privilege would lose much of its protective force because privileged information may be in some sense relevant in any lawsuit. *Rademacher*, 455 P.3d at 773. To establish an implied waiver to the attorney-client based on the assertion of a claim or defense, a party must show that the asserted claim or defendant actually *depends on* privileged information. *Id.*

In *Rademacher*, the plaintiff filed suit close to the date of the running of the statute of limitations. At issue was *when* the plaintiff had become aware that she had been damaged by the defendant's alleged misconduct. The *Rademacher* plaintiff had been represented by counsel prior to the filing date. The defendant requested in discovery the attorney's files relating to the representation on the theory that by claiming lack of knowledge of the damage element of the claim, the plaintiff had impliedly made her lack of knowledge a critical issue at trial. Despite the fact that the lack of knowledge might have been relevant at trial, the Colorado Supreme Court found no implied waiver of the privilege. *Id.* The Colorado Supreme Court emphasized that without asserting a claim that "focused or depended on advice given by her attorney," there was no implied waiver. And it was further stressed that just because privileged information might become relevant in a lawsuit, that alone cannot establish an implied waiver. Otherwise,

7

"the privilege would lose much of its protective force, given that privileged information might in some sense be relevant in any lawsuit." *Id.* at 774. In addition, the plaintiff had not inserted lack of knowledge into the case. It was the defendant, by raising the statute of limitations as a defense, that had injected the plaintiff's knowledge (or lack thereof) into the case.

So, in *Rademacher*, the Colorado Supreme Court rejected the applicability of their decision in *DiFede*. In *DiFede*, the court concluded that the plaintiff *had* impliedly waived the attorney-client privilege with respect to communications that she had had with her counsel by expressly contending that she relied to her detriment on statements made by opposing counsel, notwithstanding the fact that she had obtained advice on the same matter from her own lawyer. In *DiFede*, the plaintiff challenged the validity of a separation agreement between herself and her ex-husband, arguing that her ex-husband's attorney had fraudulently induced her to sign the agreement by falsely representing that it was unenforceable. *Id.* at 538, 542–43. The plaintiff, however, had consulted with her own counsel regarding the enforceability of this agreement before she signed it, and the defendant thus contended that any reliance by the plaintiff on defense counsel's statement was unreasonable. *Id.*

The court concluded in *DiFede* that, on those facts, the plaintiff had impliedly waived any privilege that she had had in her communications with her own counsel because her claim of justifiable reliance on opposing counsel's misstatement had placed at issue those confidential communications, which tended to undermine her reliance claim. *Id.* In *Rademacher*, by contrast, the plaintiff never alleged that misinformation provided by her opponent, nor information that he had concealed,

8

caused any delay in filing suit. In comparison to *DiFede*, the *Rademacher* plaintiff made no express allegation placing her knowledge (or lack thereof) at issue.

The Court finds that the present case is more similar to *DiFede* than *Rademacher*. Plaintiff Scheeler has expressly injected the issue of his lack of sophistication and knowledge of these transactions and his reliance on Hirschbiel and the Williams Mullen law firm into the case. If this were just a lawsuit between Scheeler and Hirschbiel, the easy application of the rule in *DiFede* would justify piercing the privilege and ordering the production of the disputed attorney-client privileged documents. But this is not a case involving just Scheeler and Hirschbiel. Mr. Day is a third party defendant, and AGR is itself a plaintiff in the case. It may be true that the Dvorak law firm was not advising Scheeler in any meaningful way about what he needed to do to protect himself in the transaction, but there is no affidavit or other evidence (such as a retention letter with Dvorak) that would support such a conclusion. Unfortunately, at this time, the Court lacks sufficient information to come to any conclusion on this issue.

First, the Court only has the representation of counsel as to who hired Dvorak, for what purpose, and as to the nature of the legal advice being given. Second, Mr. Day is a third party defendant in this case. If Mr. Day were in fact the client for whom Dvorak was giving legal advice, and Mr. Day has exposure in this litigation, it does not necessarily seem fair that his privileged communications with his own counsel should be revealed because of Scheeler's litigation choices. Of course, Scheeler is copied on most of the allegedly privileged communications, and if Day was the intended client, then sharing that information with Scheeler may have waived any privilege.

9

At oral argument on this issue, the Court expressed concern about the scant briefing on this issue and the Court gave both parties the opportunity to submit more robust briefs. That offer was declined.

Now, however, the Court feels the need to insist. Within one week from the date of this Order, Plaintiffs shall submit a supplemental brief, not to exceed 10 pages in length, on the issue of the "Dvorak Privileged Records." Plaintiffs' supplemental brief shall include as an attachment at least one affidavit or declaration from Mr. Day, Mr. Scheeler, or a representative of the Dvorak law firm explaining the nature of Dvorak's representation and advice during the disputed transaction. The retention letter or agreement explaining the nature of the Dvorak representation might help. The brief should also address whether copying Mr. Scheeler on advice intended for Mr. Day was either an explicit or implied waiver of any attorney-client privilege. The brief should also address whether *in camera* review of any or all of the disputed documents might be required under these circumstances. Defendants shall have a week after receipt of Plaintiffs submission to submit a responsive brief, which also should not exceed 10 pages in length.

**SO ORDERED**

Date: May 16, 2023

_____
**N. Reid Neureiter**
**United States Magistrate Judge**