IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02417-DDD-NRN

RYAN SCHEELER, an individual;
AGR GROUP LLC, a Nebraska limited liability company;
AGR, INC., a Colorado corporation; and
TOTAL UTILITY CONTRACTING OF MINNESOTA, INC., a Minnesota corporation,

Plaintiffs/Counterclaim Defendants,

v.

CANOPY HOLDINGS, LLC, d/b/a CANOPY HOLDINGS OF COLORADO, LLC, a Virginia limited liability company doing business in Colorado;
MATT HIRSCHBIEL, a Colorado resident;
CANOPY HOLDINGS OF NEBRASKA, LLC, a Nebraska limited liability company,

Defendants/Counterclaim Plaintiffs,

v.

TIMOTHY DAY, an individual,

Third Party Defendant.

---

**ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (Dkt. #69 and #73) and DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT (DKT. #71)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on the parties' motions to amend their respective pleadings. Plaintiffs seek leave to file a Third Amended Complaint. *See* Dkt. #73.[1] Defendants seek leave to amend their counterclaims and third-party complaint

---

[1] Dkt. #73 is the publicly filed placeholder for the underlying motion, which was filed under restriction at Dkt. #69.

add claims for exemplary damages. *See* Dkt. #71. Both sides filed oppositions and replies. The Court heard argument on the respective motions on March 28, 2023, taking the matters under advisement. *See* Dkt. #88 (Minute Entry). Having reviewed all the relevant filings, including the proposed amended pleadings, the Court **GRANTS** both motions, Dkt. #71 and Dkt. #73. Plaintiffs are granted leave to file a Third Amended Complaint, and Defendants are granted leave to amend the counterclaims and third-party claims to seek exemplary damages.

### Background

This is a lawsuit about a business deal gone bad. Plaintiff AGR Group, LLC ("AGR") was a general contractor and roofer operating out of Nebraska. Plaintiff Ryan Scheeler ("Scheeler") is the majority managing member of AGR. He is a roofer and general contractor by trade. Defendant Matt Hirschbiel ("Hirschbiel") is the managing member of Defendant Canopy Holdings, LLC ("Canopy").

Hirschbiel and Scheeler were friends. In 2020, the owners of AGR, including Scheeler and third-party defendant Timothy Day, were interested in selling the company. It is alleged that Hirschbiel enticed them to entrust him to run a more complicated "roll-up" style sale as a way to earn greater returns for all involved. Ultimately, the objective of the "roll-up" sale was to sell AGR as part of a larger portfolio, so that the sale of AGR would generate a larger rate of return than if sold alone.

Plaintiffs allege that Hirschbiel represented himself as competent and qualified to handle the set up and structure of the proposed roll-up when, in fact, Hirschbiel had no particular training, skill, or experience in roll-ups or complicated mergers.

It is further alleged that Scheeler and AGR were not independently represented during the drafting of relevant documents or before entering into the transaction. Scheeler trusted Hirschbiel and the William Mullens law firm (hired by Hirschbiel) to act properly and in furtherance of the parties' joint interests. *See* Dkt #6 ¶ 35. Hirschbiel formed Canopy to act as the holding company for the roll-up. Scheeler and Hirschbiel became officers and employees of Canopy.

It is fair to say this entire business arrangement has gone badly. It is alleged that Hirschbiel failed to obtain necessary financing and failed to pay his own buy-in. It is further alleged that Hirschbiel lacks the skills and experience to actually manage a roofing company. Then, in February 2022, the Canopy board voted to terminate Scheeler as an officer and employee.

As a result of the alleged collapse of the roll-up plan and Scheeler's termination from Canopy, Scheeler and AGR have brought a number of direct and derivative claims including for a declaratory judgment, for wrongful termination, for an accounting, for breach of contract for failing to pay an alleged agreed earnout under the purchase agreement, for breach of contract related to repayment of company shares; for breach of fiduciary duty against Hirschbiel, for negligent misrepresentation against Hirschbiel, for conversion, and civil theft.

On the other side, Defendants Canopy Holdings, LLC and Hirschbiel have filed counterclaims (and third-party claims) against Scheeler and Day asserting, among other things, that Scheeler and Day breached the representations and warranties in the purchase agreement (breach of contract) and committed fraud in the inducement by making material misrepresentations as to the profitability and financial condition of AGR

prior to the closing of the transaction. Defendants also seek a declaratory judgment as to how a disputed earnout should be calculated. *See generally*, Dkt. #18 (Answer to Second Amended Complaint, Affirmative Defenses, Counterclaims, and Third-Party Complaint).

Plaintiffs, for their part, seek to amend their complaint for a third time. According to Plaintiffs, the proposed amendment has four objectives: to (1) provide additional factual allegations about misconduct by Hirschbiel underlying the derivative claims, (2) add a new claim for expulsion of Hirschbiel under Virginia law; (3) add a claim for exemplary damages which, under Colorado law, cannot be asserted until after the parties exchange initial disclosures; and (4) add factual allegations relevant to the pending motion to dismiss concerning Hirschbiel's fiduciary duties in his roles as manager and president and the Joint Venture Agreement. *See* Dkt. #69 at 2.

Defendants, by contrast, seek only to add a counterclaim and third-party claim for exemplary damages based on alleged fraud in the inducement and willful and wanton conduct. *See, generally,* Dkt. #71.  Both sides sought leave to amend their respective pleadings before the deadline set in the scheduling order, which date was February 9, 2023.

**Standards for Motions to Amend Pleadings**

The Court begins with the principle that leave to amend shall be freely granted when justice so requires. See Rule 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Because the motions to amend were filed within the time provided in the scheduling

4

order, the Parties need not show good cause to modify the scheduling order under Rule 16. Only the requirements of Rule 15(a) need be met. Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Amendments of pleadings are liberally allowed in recognition of one of the basic policies of the rules of civil procedure—"that pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*: Civil 2d § 1473 at p. 521.

In addition, where a proposed amendment is not patently futile on its face, I am inclined to follow the principle articulated by Judge Ebel, who noted of a defendant's extensive futility argument raised in opposing a proposed amendment: the "futility argument seems to place the cart before the horse. Rather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place." *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, Civ. No. 07-cv-01145, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008); *see also Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d. 726, 736 (D. Del. 2002) ("[T]his court hesitates to undergo a rigorous 12(b)(6) analysis of the claims alleged to be futile based on less than complete briefing, especially in light of the deferential standard under which the court must consider 12(b)(6) motions. The court believes the better course is to liberally allow amendments

5

that state a colorable claim and defer judgment as to whether they survive a motion to dismiss for failure to state a claim until such time when that motion is raised.").

### Standards for Amending Pleadings to add Claims for Exemplary Damages under Colorado Law

Under Colorado law, Colo. Rev. Stat. § 13-21-102(1.5)(a) prohibits parties from including a claim for exemplary damages in an initial claim for relief. The statute requires that such claim may be added by amendment to the pleadings only after the exchange of initial disclosures, and only if the party "establishes prima facie proof of a triable issue." *Id.* The existence of a triable issue on liability for exemplary damages is established by showing a reasonable likelihood that the issue will ultimately be presented to the jury for resolution. *Leidholt v. District Court*, 619 P.2d 768, 771 N .3 (Colo. 1980).

Under § 13-21-102(1)(a), exemplary damages may be awarded if the defendant's action resulted in an injury "attended by circumstances of fraud, malice, or willful and wanton conduct." To demonstrate fraud, the plaintiff must show that the defendant made a "false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). Willful and wonton conduct is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(1)(b). "Where the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the

statutory requirements are met." *Affordify, Inc. v. Medac*, Inc., Civil Action No. 19-cv-02082-CMA-NRN, 2020 WL 6290375, at *4 (D. Colo. Oct. 27, 2020) (quoting *Coors*, 112 P.3d at 66).

A party seeking to add a claim for exemplary damages need not respond to contrary evidence. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, Civ. No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) ("At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a prima facie case of willful and wanton behavior for the purpose of allowing Plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in Plaintiffs' favor."); *Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *4 (D. Colo. Jan. 17, 2007), ("I am concerned here only with the preliminary question of whether [the plaintiffs] have made a prima facie case under § 13-21-102(1.5)(a), not with summary judgment."). Thus, an opposing party's effort at explaining or rebutting prima facie proof or provision of contrary evidence serves no purpose. In deciding whether a moving party has established a prima facie case, the Court looks only to the evidence provided by the moving party and views that evidence in the light most favorable to the Plaintiff.

**Defendants' Motion to Add Claim for Exemplary Damages**

The Court will first address the Defendants/Counterclaim Plaintiffs' desire to amend their counterclaims and third-party complaint to seek exemplary damages based

7

on alleged fraudulent and "willful and wanton conduct" in connection with pre-contractual representations. *See* Dkt. #71.

The prima facie case for exemplary damages is based on supposed false financial statements which Scheeler and Day had presented as true and correct, all for the purpose of inducing the Defendants/Counterclaim Plaintiffs to enter into the purchase transaction. In the Purchase Agreement, Scheeler and Day represented and warranted the accuracy of a financial statement, attached to a Purchase Agreement Schedule, which listed "Net Revenues in Excess of Expenses" as $1,112,981 for 2019. After the purchase, a revised income statement was prepared by a retained financial consultant (AVL Growth Partners). The revised net income figure was $539,054—more than one half-million dollars less than the net income figure set forth in the 2019 income statement. *See* Dkt. #71 at 5-6.

But the fact that a representation turned out to be false is not enough to make a fraud claim. The representation must have been known to be false at the time the statement was made. *See Coors*, 112 P.3d at 66 (elements of fraud include "false representation of material fact, knowing that representation to be false"). The Defendants/Counterclaim Plaintiffs point to two tax returns filed for tax-year 2019 that contradict the 2019 Income Statement. The AGR Group tax return filed on April 6, 2020 reflected ordinary business income of $449,305 and an amended AGR Group tax return filed on October 13, 2020, showed an amended ordinary business income of $633,728. Per the Defendants/Counterclaim Plaintiffs, based on these tax returns, "it is clear that [Scheeler and Day] knew the 2019 Income Statement was false." Dkt. #71 at 7. The

8

Court agrees that this is enough evidence from which a jury could infer knowledge of falsity, thereby making out a prima facie case for fraud.

Plaintiffs/Counterclaim Defendants' opposition to Canopy and Hirschbiel's claim for exemplary damages is based on the economic loss doctrine, which has been adopted by the Colorado courts. They assert that there can be no separate fraud claim where the duty to disclose was created by the contract. Plaintiffs/Counterclaim Defendants assert that while the economic loss rule is not generally available to shield intentional tortfeasors, it still applies in the limited situation where the obligation allegedly violated is purely a creation of contract and there is a specific contractual remedy for the conduct alleged. *See* Dkt. #77 at 4. The cases cited for this proposition are *Dream Finders Homes LLC v. Weyerhaeuser NR Company*, 506 P.3d 108 (Colo. App. 2021) and *McWhinney Centerra Lifestyle Ctr. LLC v. Poag & McEwen Lifestyle Centers-Centerra, LLC*, 486 P.3d 439, 455 (Colo. App. 2021).

Under Colorado's version of the economic loss rule, a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law. The economic loss rule thus prevents tort law from swallowing all of contract law. *Town of Alma v. Azco Construction, Inc.*, 10 P.3d 1256, 1260–64 (Colo. 2000).

But the *Dream Finders* case makes clear that, even where a negotiation ultimately results in a written contract that might include specific warranties or representations, there exists an independent, common-law duty not to engage in pre-contractual fraud that might induce an adverse party to enter into the contract. *Dream Finders*, 506 P.3d at 121; *see also*, *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603,

9

607 (Colo. 2016) ("There is an important distinction between failure to perform the contract itself, and promises that induce a party to enter into a contract in the first place."). In other words, the "economic loss rule does not apply to claims arising from a defendant's pre-contractual conduct because, at that time, there was no contract that could have subsumed identical tort duties." *Dream Finders*, 506 P.3d at 120.

Because the duty not to commit (pre-contractual) fraud arises from the common law and not from any contractual obligation, the economic loss doctrine does not bar the fraud claim in this instance. *See also McWhinney Centerra*, 486 P.3d at 454-55 (economic loss doctrine did not preclude fraudulent concealment claim).

Plaintiffs/Counterclaim Defendants also argue that the Purchase Agreement specifically incorporates claims for "fraud or intentional misrepresentation," as another basis for precluding the fraud claim. But the Purchase Agreement imposes a cap on potential damages for violations of the representations and warranties, *except in cases of actual fraud. See* Dkt. #71-1 at ¶ 7.04(c). It would make little sense if the Purchase Agreement allowed unlimited damages in circumstances of actual fraud, but claims of actual fraud were precluded because of a non-applicable damages cap.

For these reasons, and given the low threshold for amending to add a claim for exemplary damages under Colorado law, the Defendant/Counterclaim Plaintiffs' claim for exemplary damages will be allowed.

**Plaintiffs' Motion to Submit a Third Amended Complaint**

Plaintiffs explain that they received what were effectively Defendants' initial disclosures on Friday, February 3, 2023 and moved shortly thereafter for leave to file their Third Amended Complaint. It is undisputed that the Motion is timely.

Defendants object to the proposed third amendment arguing that the amendments are futile, unduly prejudicial, made in bad faith, and unduly delayed. Specifically, Defendants argue that the new claim seeking to expel Hirschbiel from Canopy is brought in the wrong venue. The amendment to Plaintiff's fiduciary duty claims are grounded in a Joint Venture Agreement that contains a mandatory mediation provision; and the amended fiduciary duty claims fail to address the ground for dismissal that already existed in the Second Amended Complaint and purportedly suffer from the additional defect of pertaining to conduct that is protected by the business judgment rule. In other words, Defendants ask that the request to file a Third Amended Complaint be denied because it would not survive a motion to dismiss. Dkt. #79 at 4. And indeed, a proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Barnes v. Harris,* 783 F.3d 1185, 1197 (10th Cir. 2015).

First, there does not appear to be any dispute that the aspect of the Plaintiff's proposed Third Amended Complaint that seeks to add a claim for exemplary damages should be allowed. The allegations are that Scheeler trusted his personal friend, Hirschbiel to handle to roll up transaction, largely based on Hirschbiel's (mis)representations about his skill and experience. After assuming a position of trust as a joint-venturer with Scheeler, Hirschbiel handled the accounting and corporate setup, then later set in motion the process to squeeze out Scheeler. But for Hirschbiel's false representations about his experience, Scheeler would not have entered into the transaction. This fits the necessary elements of fraud and the requisite elements for an award of exemplary damages. *Coors*, 112 P.3d at 66 (Colo .2005) (reciting elements of fraud); *Amber Prop.'s., Ltd. V. Howard Elec. and Mech. Co., Ltd.,* 775 P.2d 43, 47

(Colo. App. 1988) (tortious actions attended by circumstances of fraud merit submission of question of exemplary damages to the jury).

Next is the issue of the claim seeking to expel Hirschbiel from Canopy Holdings LLC. Canopy, although based in Colorado, is a Virginia entity. Defendants argue that that this expulsion claim is futile, i.e., would be subject to dismissal, because it is being brought in the wrong venue—Colorado, instead of Virginia. *See* Dkt. #79 at 5. The basis for this argument is that the Operating Agreement includes a provision that specifies that any proceeding to enforce any provision, or any right arising out of the Operating Agreement, should be brought in the state or federal courts of Virginia. Per the Defendants, this is a "mandatory forum selection clause," which must be enforced. *Id*.

Plaintiffs respond that this is not a claim seeking to enforce a provision or a right arising out of the Operating Agreement. Instead, Plaintiffs are seeking to exercise a right granted by a Virginia statute, which Plaintiffs may invoke because Canopy is a Virginia company formed under Virginia's statutes. The statute in question, Virginia Code §13.1-1040.1, provides that a member may be disassociated (expelled) from a Virginia limited liability company "by judicial determination," on application by the company or another member, if the member "engaged in wrongful conduct that adversely and materially affected the business of the limited liability company"; "willfully or persistently committed a material breach of the articles of organization or an operating agreement"; or "engaged in conduct relating to the business of the limited liability company which makes it not reasonably practicable to carry on the business with the member." Va. Stat. § 13.1-1040.1 (5)(a)-(c).

12

The claim for expulsion is based on Hirschbiel's allegedly having engaged in wrongful conduct that adversely and materially affected the business of Canopy Holdings and its subsidiaries, engaged in conduct related to the business of Canopy Holdings that makes it not reasonably practicable to carry on the business with the member, and failed to act consistent with his duty to account to and hold in trust for Canopy Holdings' property. *See* Dkt. #69-10 at 34, ¶¶ 335–337. The Court agrees that these claims are not based on rights granted by the Operating Agreement or claims based on alleged breaches of the Operating Agreement. Instead, these are claims based on statutory rights granted to all Virginia LLC members by Virginia law. Therefore, the Operating Agreement forum selection clause does not apply. Defendants cite no case suggesting that an expulsion claim based on this Virginia statute must be brought in the courts of Virginia. Canopy is alleged to be headquartered in Colorado and Hirschbiel is a Colorado resident. The Court therefore rejects the argument that the expulsion claim is not properly brought in this Colorado lawsuit.

Next is the issue of whether the breach of fiduciary duty claims are futile. Defendants argue the breach of fiduciary duty claims are futile because the claims are brought based on duties created by a Joint Venture Agreement and the Joint Venture Agreement mandates that any dispute "arising out of or relating to" the Joint Venture Agreement must be submitted to "mediation in accordance with any statutory rules of mediation." Dkt. #79 at 6. Per the Joint Venture Agreement, only if mediation is not successful may the complaining joint venturer "seek an alternative form of resolution in accordance with any other rights and remedies afforded to them by law."

13

Citing *United States ex rel. El Paso Glass Co., Inc. v. David Boland, Inc.*, Case No. 17-cv-02072-CMA-STV, 2018 WL 1566834 (D. Colo., March 30, 2018), Defendants argue that because Plaintiffs have not complied with the mandatory mediation procedure, any legal claim would be futile. But, as Plaintiffs point out, a mandatory mediation clause does not render a claim (which would otherwise require mediation) subject to dismissal. If the mediation clause applies, then the proper remedy is to stay that claim until mediation is completed. Indeed, the *El Paso Glass* case which Defendants themselves cite, resulted in the stay of proceedings pending completion of the requisite mediation procedures. Multiple other cases were cited in the *El Paso Glass* opinion "staying similar proceedings based on similar contractual language." *Id.* at *3.

Plaintiffs also argue that the mandatory mediation provision has been waived as Plaintiff had sought to engage Defendants in negotiations and mediation prior to serving the original complaint and were rebuffed. The issue of waiver need not be decided at this point. All that needs to be decided is whether the mandatory mediation provision makes the claims for breach of fiduciary duty futile. For purposes of amendment of the complaint, the claims are not futile (although they may be stayed pending mediation upon proper motion), and therefore the amendment to add the claims should be allowed.

Next, the business judgment rule does not render the amendments relating to corporate fiduciary duties futile. Defendants appear to be arguing that additional factual allegations found in the proposed amendment should not be permitted because "the conduct described is protected by the business judgment rule." Dkt. #79 at 7. Defendants argue that the factual allegations Plaintiffs seek to add "are merely

14

descriptions of a board member performing routine business functions." *Id*. at 8. Nevertheless, the amended complaint alleges that Hirschbiel's actions were taken in bad faith. With respect to these arguments, the Court finds that the abbreviated briefing on a motion for leave to amend is not the appropriate place to assess the application of the business judgment rule to specific new factual allegations which may or may not support a claim of breach of fiduciary duty. The amendments should be allowed, and whether they are sufficient to support (or provide more support for) the existing breach of fiduciary duty claims against Hirschbiel should be the subject of a motion to dismiss or for summary judgment.

Finally, Defendants go through the list of reasons why motions to amend may be denied, including that proposed amendment subjects the Defendants to undue prejudice, creates a "moving target," the new allegations are made in bad faith, and were made after undue delay. *See* Dkt. #79 at 9–14. The Court finds none of these arguments to be persuasive. This is a complex business dispute that involves numerous allegations. The underlying transaction and subsequent business relationship apparently had many moving parts. When first filed, an initial, or even an amended complaint, may not be fully formed with respect to either the facts or the legal theories on which relief can be granted. Here, Plaintiffs have moved to amend within the time provided in the Scheduling Order. The factual allegations are not so unrelated to underlying fundamental claims in the case as to constitute an unfairly prejudicial "moving target." The general principle articulated in *Foman v. Davis*, 371 U.S. 178 (1962), and embodied in Rule 15 that leave to amend "shall be freely given when justice so requires" is to be heeded here. *See Foman*, 371 U.S. at 182 ("If the underlying facts

or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

**Conclusion**

In light of the foregoing, if is hereby **ORDERED** that Defendants/Counterclaim Plaintiffs' Motion for Leave to File Their Third Amended Counterclaims and Third Party Complaint (Dkt. #71) is **GRANTED**. The Clerk of Court is directly to separately file the Amended Counterclaims and Third Party Complaint (Dkt. #71-6). Plaintiff/Counterclaim Defendant shall respond to the Amended Counterclaims and Third Party Complaint in accordance with Fed. R. Civ. P. 15(a)(3).

It is further **ORDERED** that Plaintiffs' Motion for Leave to Submit Third Amended Complaint (Dkt. #73) is **GRANTED**. The Clerk of Court is directed to separately docket the proposed Third Amended Complaint (Dkt. #69-9), which is now the operative complaint. Defendants shall answer or otherwise respond to the Third Amended Complaint in accordance with Fed. R. Civ. P. 15(a)(3).

Date: June 5, 2023

_____
N. Reid Neureiter
United States Magistrate Judge